## 18811

Ollis ROCHESTER, Appellant, v. Wayne E. BUSSEY, Respondent
(162 S. E. (2d) 841)

348

Messrs. *Charles W. Spence* and *Robert A. Clay,* of Greenville, *for Appellant,*

Messrs. *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

July 24, 1968.

Lewis, Justice.

This action arose out of a collision which occurred in Greenville County at the intersection of U. S. Highway No.

25 and Belvue Road on October 24, 1963. The vehicles in which the parties were travelling were meeting each other on Highway No. 25 and the accident occurred while the driver of the automobile in which plaintiff was riding was attempting to make a turn into Belvue Road. Among the signs which had been placed on Highway No. 25 by the State Highway Department to regulate traffic at the intersection were two signs, erected on the same post, one above the other, with the top sign reading "School Bus Crossing" and the lower one "35 M.P.H.," both in black letters on a yellow background. The question to be decided is whether the foregoing sign operated to fix the speed at which vehicles could be lawfuly operated in the area at the time of the collision.

The question at issue is presented on appeal of the plaintiff from an adverse judgment, which it is alleged was prejudicially influenced by the refusal of the trial judge to instruct the jury, at plaintiff's request, that the legal speed limit in the area at the time of the collision was fixed by the highway sign at 35 miles per hour. The trial judge, instead of instructing the jury as requested by plaintiff, submitted the question of the application and effect of the sign to the jury to determine, after instructing them as to the provisions of the statutes relating to the authority of the Highway Department to erect and maintain traffic control signs upon the highways.

The plaintiff contends that the trial judge erred in submitting the foregoing issue to the jury and should have held as a matter of law that the sign controlled the speed limit. The defendant, on the other hand, contends that the sign did not fix the speed limit but was erected as a warning sign showing the maximum advisory speed at the intersection. In support of his position the defendant offered the testimony of a highway partolman and the Highway Department engineer in charge of erecting and maintaining the signs in the area, both of whom testified that the sign

was not a speed limit sign but one to warn the public of danger at the interesection. Their testimony was based soley on the Highway Department Manual of Standards and Specifications for Uniform Traffic Control Devices which was introduced in evidence. According to this manual a *speed limit* sign shows black lettering on a white background and carries the words "Speed Limit" in addition to showing the limit in miles per hour; while a sign, such as the present one, with the speed in black letters on a yellow background and used in connection with another sign is designated as a "Maximum Advisory Speed Sign."

The pertinent statutory authority of the State Highway Department to erect traffic control signs or devices is found in Sections 46-301, 46-302, 46-304, and 46-367 of the 1962 Code of Laws. While the statutes dealing with speed restrictions were amended in certain respects in 1966, we are only concerned with their status at the time of the collision in 1963. Section 46-301 permits the Department to adopt a manual of standards and specifications for a uniform system of traffic control devices for use upon the highways and streets within the State; and Section 46-302 authorizes the Department to place and maintain such traffic control devices upon the highways as it deems necessary to regulate, warn or guide traffic. Section 46-301 and 46-302 deal generally with the authority of the Highway Department to erect traffic control devices. However, Section 46-367 deals specifically with the authority of the Department to alter statutory speed limits. Under this section whenever the Department determines upon the basis of an engineering and traffic investigation that any speed limit set by statute is "greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, the Department may determine and declare a reasonable and safe * * * speed limit thereat which shall be effective * * * when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway."

Obedience to the instructions of an official traffic control device is required by Section 46-304; and official signs erected by the Department for the purpose of regulating, warning or guiding traffic are "official traffic control devices," Section 46-262.

The record shows that signs such as the one in question were erected by the State Highway Department, in each instance, as a result of its determination that a hazard existed which made a speed in excess of that posted unreasonable and unsafe under average conditions. This determination complied with the requirements for altering the statutory speed limit under Section 46-367. The intersection was a school bus crossing which created a particular hazard. The sign accordingly warned the motorist that he was approaching a "School Bus Crossing." Since the Department had determined that the maximum reasonable and safe speed under average conditions was 35 miles per hour, there was also erected a sign showing "35 M.P.H."

The fact that the "35 M.P.H." sign carried black lettering on a yellow background, was used in connection with the "School Bus Crossing" sign, and designated in the Highway Department Manual as a "maximum advisory speed sign," is not determinative of its legal effect. Such must be determined from the wording of the sign in the light of the statutory provisions relative to the effect to be given official signs erected by the Department to control traffic.

Since the sign was erected by the Highway Department in accordance with statutory authority, it was an official traffic control device and, as such, traffic was required to comply with its instructions. This meant that motorists were informed that they were approaching a school bus crossing and that 35 miles per hour was the maximum speed permitted in the area. There was nothing about the wording of the present sign to indicate that it

constituted only a warning to traffic. It was not ambiguous and, to a motorist, it could only have meant that it was posted to regulate speed in the area.

This case was previously before us and one of the issues involved the relevancy of the allegations in the complaint that the sign in question constituted the posted speed limit in the area. 249 S. C. 123, 153 S. E. (2d) 121. We there held that such allegations were relevant and we find nothing in the record which would require that we change the following views expressed in disposing of the issues:

The Resident Judge clearly misconstrued the meaning and application of the foregoing sign when he held that it was erected to protect only school buses and school children and did not apply except during hours when school buses would normally operate. There is nothing about the sign, as alleged, to so limit its application. It was a warning to the public that they were entering an area where the speed limit was 35 miles per hour and were approaching a school bus crossing. While the sign warned of a school bus crossing, it did not expressly or by implication limit the application of the 35 mile per hour speed limit to only those hours when school buses normally operate. If the sign was an official one, it fixed the speed limit in the area and applied to the public generally regardless of the time of day.

Speed was an important issue in the case and the refusal of the trial judge to instruct the jury that the sign in question established a maximum speed limit of 35 miles per hour constituted reversible error.

Reversed and remanded for a new trial.

Moss, C. J., and Brailsford and Littlejohn, JJ., concur.

Bussey, Associate Justice, did not participate.